Argued and submitted February 27, affirmed June 29,
reconsideration denied August 27,
petition for review denied September 22, 1981 (291 Or 662)

STATE OF OREGON,
*Respondent,*

*v.*

JOSEPH ALBERT TRACY,
*Appellant.*

(No. 193,057, CA 19328)

630 P2d 370

Dale L. Crandall, Salem, argued the cause and filed the brief for appellant.

Richard David Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, John R. McCulloch,

Jr., Solicitor General, William F. Gary, Deputy Solicitor General, and Jan Peter Londahl, Assistant Attorney General, Salem.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant appeals from a judgment of conviction of the offense of Driving While Under the Influence of Intoxicants, ORS 487.540, after his motion to suppress evidence was denied by the trial court. We affirm.

The facts which give rise to the suppression issue are not controverted. A state police officer was patrolling southbound on Highway 226, approaching the North Santiam River Bridge, when he encountered a chip truck coming across the bridge northbound. In front of the chip truck was a small blue pickup. As the officer met the two trucks coming in the opposite direction, he received a CB report: "Smokey, you'd better stop the small blue pick-up right in front of me, he's all over the road." The officer crossed the bridge, turned around and, after he came up behind the chip truck, observed the blue pickup turn into the parking lot of the Fish Hatchery Tavern. He pulled in behind the pickup; as he was getting out of his vehicle, he saw that defendant was already out of the pickup and walking toward the door of the tavern. The officer said: "Sir, wait." Defendant waited. On approaching defendant, the officer detected a strong odor of alcohol and observed that defendant's eyes were watery and bloodshot and his face was flushed. The defendant's speech seemed slurred. In response to inquiries, defendant made some inculpatory statements concerning the number of drinks he had had; he took a field sobriety test with little success; and the officer arrested defendant for driving under the influence of intoxicants. Subsequently, the officer conducted an intoxilyzer test of defendant's breath, which showed the blood alcohol content to be 0.15 percent by weight.

Defendant contends that ORS 131.615(1),[1] providing that "a peace officer who reasonably suspects that a person has committed a *crime* may stop the person and, * * * make a reasonable inquiry" (emphasis supplied), is not applicable, because a first offense of driving under

---

[1] ORS 131.615(1) provides:

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

the influence of intoxicants is not a "crime" within the meaning of that statute, ORS 161.515,[2] and nothing in the record suggests the officer had any reason to suspect defendant had been convicted previously of that offense. He also contends that the officer did not have probable cause to believe that the defendant was driving under the influence of intoxicants, did not know who transmitted the CB message because the source was not identified, did not know from what location the transmission was made and did not know whether the transmission was directed to him or some other police officer. The officer did not observe the defendant weaving within a lane or driving in an erratic manner over a substantial distance. *See State v. Bailey,* 51 Or App 173,624 P2d 663, *rev den* (1981).

Assuming defendant's contentions are correct, he must, nonetheless, have been "stopped" impermissibly as he walked toward the tavern. We hold that he was not. The Supreme Court in *State v. Warner,* 284 Or 147, 161, 585 P2d 681 (1978), recognized three kinds of "encounters" between the police and citizens: (1) an arrest, justified only by probable cause; (2) a stop, *i.e.,* "a temporary restraint of a citizen's liberty," ORS 131.605(5), which is justified by reasonable suspicion that the person has committed a crime, ORS 131.615(1); and (3) "mere conversation" (questioning without restraint of liberty), which needs no justification. *See State v. Kennedy,* 290 Or 493, 497, 624 P2d 99 (1981). Here, we conclude that the officer's call to the defendant asking[3] him to "wait" falls into the third category identified in *Warner:* the defendant waited and

---

[2] ORS 131.605(1) provides:

"As used in ORS 131.605 to 131.625, unless the context requires otherwise:

"(1) 'Crime' has the meaning provided for that term in ORS 161.515."

ORS 161.515 provides:

"(1) A crime is an offense for which a sentence of imprisonment is authorized.

"(2) A crime is either a felony or a misdemeanor."

[3] The record does not indicate whether defendant considered the officer's words, "Sir, wait," to be a command rather than a request. The officer was in uniform, but there is no other evidence from which it may be inferred that he intended to restrain defendant's liberty, or that defendant reasonably thought his liberty was being restrained. *See State v. Warner, supra; State v. Kennedy, supra.*

engaged in conversation without any restraint of his liberty. He had already stopped his pickup truck and had got out of it before the officer called to him. The officer had the right to do that, and as he approached the defendant, it was apparent to the officer that the defendant, was, in fact, probably intoxicated. At that point, the officer had probable cause to believe that the defendant had been driving while under the influence and had the right to inquire further.[4] There is no contention that defendant was in custody prior to his arrest, which occurred after defendant made his inculpatory statements and had taken the field sobriety tests.

The trial court properly denied defendant's motion to suppress.

Affirmed.

---

[4] A broad reading of *State v. Kennedy, supra,* might permit the conclusion that even if defendant had been "stopped" illegally, the voluntary conversation and conduct which followed were not suppressible. We need not, and do not, go so far here.